IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHIRLEY WALKER                                          PLAINTIFF

VS.                        CASE NO. 4-05-CV-1336

ARKANSAS DEPARTMENT OF CORRECTIONS and                  DEFENDANT
SHERRI FLYNN IN HER OFFICIAL CAPACITY

### Memorandum Opinion and Order

Plaintiff Shirley Walker ("Walker") sues Defendants Arkansas Department of Corrections ("ADC") and Sherri Flynn ("Flynn"), Walker's immediate supervisor, for race discrimination and retaliation under Title VII of the Civil Rights Act and for violations of 42 U.S.C. §§ 1981 and 1983 (doc. #36).  The Defendants have moved for summary judgment.  Because, after viewing the facts in a light most favorable to the non-movant, Walker cannot bring a § 1981 or § 1983 claim against either Defendant or a Title VII claim against Defendant Flynn but has met her burden to demonstrate a prima facie case of discrimination and retaliation, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion.

## I.  Facts

In December 2000, ADC hired Walker, an African-American female, as a Sex Offender Screening and Risk Assessment Program ("SOSRA") parole officer.  Her job title was changed to corrections counselor with no change in duties.  SOSRA is responsible for evaluating sex offenders required to register in

Arkansas.  Walker's job duties included gathering information on sex offenders and compiling a file of that information so SOSRA could assign a risk level to offenders. Flynn, a white female, is the SOSRA Administrator and was Walker's immediate supervisor. Flynn was Walker's supervisor for all times relevant to this case, including hiring and termination.

Early in her employment, Walker performed her work well.  In August 2002, a Correctional Counseling Program Leader position opened, and Walker applied.  Although the hiring panel interviewed Walker, she was not chosen.  According to ADC, Flynn began noticing some deficiencies in Walker's work later in 2002, including information gathering and file composition.

On January 14, 2003, Walker filed her first Equal Employment Opportunity Commission ("EEOC") charge of race discrimination. In it, she complained of not receiving the Program Leader position in favor of a younger, white female, who was less experienced and given greater job duties.  She also claimed this discrimination was a continuing action, but Walker had not made any prior EEOC claims or indicated any other activity to support continuing discrimination.  On January 23, 2003, she received a right to sue letter from the EEOC.

According to Walker, she began receiving reprimands after she filed her EEOC charge.  She claims white employees made mistakes similar to those she was accused of but received "second chances."  Mistakes the white employees allegedly made included putting duplicate documents and information in files, making

2

improper filings, and failing to adequately provide information on offenders.  These are the same types of mistakes Walker was accused of making.

ADC claims Walker's work deficiencies continued to worsen in 2004.  On June 3, 2004, Flynn gave Walker a written reprimand.  Walker filed a grievance, claiming the written reprimand should have been a verbal reprimand under the ADC progressive disciplinary policy.  Walker's grievance was considered, and the written reprimand was changed to a verbal reprimand.

Later that June, Walker allegedly attached a document regarding one sex-offender's case to the file of another sex offender.  According to ADC, this is a major concern because it could result in an offender being given a lesser offender rating or an undeserved greater offender rating.  Flynn issued a counseling statement to Walker rather than taking disciplinary action against her in an attempt to remedy this issue.  Walker signed this counseling statement.  Walker received a second counseling statement that same day for failing to provide sufficient information for offender files.  In this incident, Walker failed to include an offender's criminal judgment in the file.  Flynn warned that continued performance issues would result in a written warning under the disciplinary policy.  Walker did not sign this statement.

In November 2004, Flynn conducted a performance evaluation of Walker.  Walker received a "fair" evaluation, which meant her performance was "less than satisfactory and requires that steps

must be taken to improve performance." (Doc. #59, exh. 49).
Walker appealed the evaluation, but ADC upheld it.  Because the
evaluation was less than a "satisfactory" rating, Walker was
ineligible to receive a promotion through the Career Ladder
Incentive Program ("CLIP").  By contrast, two of Walker's white
coworkers received CLIP promotions to Program Leader positions.

In December 2004, Flynn addressed another issue concerning
an offender file with Walker.  Walker allegedly failed to provide
any offense details regarding a rape charge.  Flynn issued Walker
a written reprimand under the ADC disciplinary policy.  Flynn
warned Walker she would continue to discipline Walker if Walker's
performance did not improve.  Walker did not sign the reprimand.

On January 6, 2005, Walker filed a second EEOC charge,
claiming race discrimination and retaliation.  Walker complained
of the August 2002 Program Leader position she did not receive,
the June 2004 written reprimand and grievance, the November 2004
"fair" evaluation that prevented any possibility of promotion,
and the December 2004 written warning.  Walker did not disclose
on the charge whether she was being submitted to continuing
discriminatory action.  The EEOC mailed her a right to sue letter
on June 30, 2005.

ADC claims Walker's performance problems continued in 2005.
In June, ADC placed Walker on administrative leave.  In August,
ADC suspended Walker for including duplicate documents in a file.

In late September 2005, Walker sued ADC and Flynn.  On
October 21, Flynn filed a third EEOC charge.  Although no copy of

4

this EEOC charge has been provided to the Court, according to Walker's brief she complained of "discrimination she was enduring on the jobsite prior to her termination." (Doc. #64, at 4). In November, ADC placed Walker on administrative leave and then terminated her employment. Walker did not appeal the termination with ADC, but she amended her October 2005 EEOC charge to include discriminatory and retaliatory termination. The Court is unsure of when Walker received a right to sue letter. Walker never amended her complaint to include these claims nor was a right to sue letter ever attached to one of her amended complaints.

## II. Discussion

ADC and Flynn have filed a motion for summary judgment, arguing ADC and Flynn are immune from liability under 42 U.S.C. §§ 1981 and 1983 as sovereigns, Flynn cannot be liable to Walker under Title VII because she is not an employer, and Walker cannot meet her burden to defeat summary judgment in her Title VII claim against ADC. Each argument will be addressed.

### a. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty

Lobby, Inc. 477 U.S. 242, 248 (1986).  The non-movant "must show there is sufficient evidence to support a jury verdict in [his] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).  The non-movant cannot rely solely on the pleadings and must present specific facts by affidavit or other evidence showing a genuine issue of material fact.  Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005).  The court views the facts and the inferences to be drawn from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Eighth Circuit Court of Appeals has expressed a strong preference against granting summary judgments in employment discrimination cases.  "Summary judgments should seldom be used in cases alleging employment discrimination." Johnson v. Minn. Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991) (citing Haglof v. Nw. Rehabilitation, Inc., 910 F.2d 492, 495 (8th Cir. 1990)).  "Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion." Johnson, 931 F.3d at 1244.  "All evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party." Id.  "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**b.    Sections 1981, 1983, and Defendant Sherri Flynn**

Flynn argues ADC and Flynn are immune from liability under §§ 1981 and 1983 as sovereigns and Flynn cannot be liable to Walker under Title VII because she is not an employer.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (holding the Eleventh Amendment bars § 1983 liability against a state or state officer unless the state waives its immunity); Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005) (holding states have Eleventh Amendment immunity from § 1981 claims); Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist., 121 F.3d 446, 447 (8th Cir.1997) ("supervisors may not be held individually liable under Title VII."); see also Bakhtiari v. Lutz, No. 06-3867, 2007 WL 3377215, at *4 (8th Cir. Nov. 15, 2007) (dismissing §§ 1981 and 1983 claims on Eleventh Amendment immunity grounds).  Walker did not brief these issues, and at oral argument, she conceded these points.  Therefore, the Court **GRANTS** summary judgment as to the § 1981, § 1983, and the Title VII claim against Flynn.  The Court also **ORDERS** Flynn be removed from the case.

**c.    Timely Discriminatory Acts**

Next, the Court must consider which acts Walker claims are discriminatory are properly before the Court.  Title VII imposes a tight statute of limitations procedure.  Plaintiffs must file a charge of discrimination with the EEOC "within one hundred and

eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1) (2000). Plaintiffs must file suit in district court within ninety days of receiving a right to sue letter from the EEOC. Id. § 2000e-5(f)(1).

In National Railroad Passenger Corporation v. Morgan, the Supreme Court held plaintiffs may not recover for "discrete acts of discrimination or retaliation" outside of the 180 day time period. 536 U.S. 101, 105 (2002). The Court rejected the continuing violation doctrine in cases where the plaintiff complains of specific and distinct employment actions. Id. at 110-111. The 180-day clock begins running on the day the act occurs. Id. at 110. The Court did not apply this rule to hostile-environment claims because those claims involve ongoing conduct occurring over a longer period of time. Id. at 115. To meet the 180-day time period, the plaintiff needs to show some discrete acts of continuing harassment occurred within 180 days of the EEOC charge. Id. at 118.

Walker has not raised a hostile-environment claim. In the January 2005 EEOC charge, she complains of not being promoted, being disciplined differently than white coworkers, and being given a "fair" performance evaluation. These are actions the Supreme Court described as discrete in Morgan. Therefore, as pled, Walker has limited her complaint to discriminatory acts that occurred between July 2004 and January 6, 2005. The only allegedly discriminatory acts that occurred within this period

are the November 2004 "fair" performance evaluation and the
December 2004 written reprimand.

Walker cannot claim discrimination on the basis of the
August 2002 promotion because although she did file an EEOC
charge related to that act, she did not file a complaint within
ninety days of receiving a right to sue letter.  While she may
have raised the promotion issue in her January 2005 EEOC charge,
she cannot revive the outdated claim in a new EEOC charge.  <u>See</u>
<u>Spears v. Mo. Dept. of Corr.</u>, 210 F.3d 850, 853 (8th Cir. 2000)
(citing <u>Soso Liang Lo v. Pan Am. World Airways, Inc.</u>, 787 F.2d
827, 828 (2d Cir. 1986))(reiterating older acts in a newer EEOC
charge does not remove the time bar of the older claims).

Furthermore, Walker has not raised her termination as a
discriminatory act in this lawsuit.  While she timely raised her
termination in an EEOC charge, she sued ADC before she was
terminated.  She has not amended her complaint to include a
termination claim.  Therefore, if she has received a right to sue
letter more than ninety days ago, she is time barred from
claiming discrimination or retaliation based on this conduct.

   **d.   Race Discrimination**

With two allegedly discriminatory acts in mind, the Court
proceeds with the familiar <u>McDonnell Douglas Corp. v. Green</u>
burden shifting framework for circumstantial-evidence cases.  411
U.S. 792 (1973); <u>cf.</u> <u>Bakhtiari</u>, 2007 WL 3377215, at *3 n.3, *4
(Shepard, J., concurring in part) (discussing the application of

the McDonnell Douglas burden shifting analysis).  While Walker seems to argue this is a direct-evidence case, she has failed to present any statements, policies, or actions indicative of a direct-evidence case.

Under the McDonnell Douglas analysis, the plaintiff must first establish a prima facie case of discrimination.  Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 296 (8th Cir. 2007).  To establish a prima facie case, a plaintiff must show that (1) she is a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside the protected class.  Singletary, 423 F.3d at 891.  Once the plaintiff establishes a prima facie case, the defendant must meet a burden of production by articulating a legitimate nondiscriminatory reason for the adverse employment action.  Clegg, 496 F.3d at 296.  Finally, if the defendant fulfills its burden of production, the burden returns to the plaintiff to establish that the defendant's reason is pretext for discrimination.  Id.

Walker is a member of a protected class as she is African-American.  However, whether she was meeting ADC's legitimate job expectations is a closer decision.  Walker's job expectations included reviewing each case as it was assigned; gathering all available information on the offenders' sex offenses, violent offenses, offenses sexual in nature, and parole violations; and documenting all attempts to obtain information and explaining why

10

certain information may not be available.  ADC has presented many examples of mistakes Walker allegedly made.  However, Walker has presented evidence that the problem with gathering sufficient information was a SOSRA problem, not just her (docs. #66-2 and #66-3).  Furthermore, two counseling statements Flynn issued were premature and retracted (doc. #66-4 and #66-5).  Finally, the November 2004 performance appraisal rated Walker "fair." However, the lowest performance criteria was "unsatisfactory." While "fair" is certainly a poor evaluation, it was her first deteriorating evaluation, and she was not given the lowest rating.  Therefore, even if Walker was not a model employee, the Court concludes Walker has sufficiently shown she was meeting her employer's legitimate job expectations to satisfy the summary judgment standard.

Regarding the adverse-employment-action prong, two discrete acts of ADC could be considered.  The first is the November 2004 performance evaluation, and the second is the December 2004 written reprimand.  Generally, an adverse employment action is described as an act with a material employment disadvantage. Singletary, 423 F.3d at 891.  Examples include changes in salary, benefits, and job responsibilities.  Id.  Poor performance evaluations and other disciplinary actions are generally not adverse employment actions because they do not materially affect employment.  Singletary, 423 F.3d at 891-92; Spears, 210 F.3d at 854.  However, they can be actionable where they have some

detrimental effect on the employee's continued employment. Clegg, 496 F.3d at 297; Singletary, 423 F.3d at 892.

Walker claims these actions have had a tangible effect on her employment because both prevented her from promotions through the CLIP program.  This effect, if true, would be a sufficient impact for an adverse employment action.  Walker concedes she did not apply for any promotions but argues she knew any applications would be futile because of the evaluation and reprimand.  The Court agrees.  The law does not require futile acts.  Flynn attested two of Walker's co-workers received promotions through the CLIP program in 2004 (doc. #59, exh. 1).  She also stated, "Due to her performance evaluation rating, Ms. Walker was ineligible to CLIP."  Viewing the evidence in a light favorable to Walker, this statement shows her performance evaluation and reprimand had a tangible effect on her terms of employment.

Concerning the final prong that similarly situated employees were disciplined differently for similar conduct, the Court has some concerns regarding the amount of evidence Walker presented. Walker provided scant evidence of which coworkers were treated differently.  She has presented evidence the mistakes she made were common to other SOSRA employees (docs. #66-2 and #66-3).  In her brief in opposition to summary judgment, she has restated her allegation in her complaint that similarly situated white employees were treated more favorably than defendant.

Her affidavit on the subject states, "During my time at SOSRA I noticed on many occasions white employee's [sic]

12

receiving 'second chances' as it relates to mistakes," and, "In essence, I can provide the names of persons who were treated more favorably than I was with the only significant difference being the color of my skin, i.e. Black." (Doc. #66, at 4).  As the Court stated at oral argument, summary judgment is the time to bring forward facts supporting the case.  It is not the time to say you "can provide the names"; you must provide the names.

However, at oral argument, Walker provided her lawyer with four people she claims were treated more favorably:  Debbie Socia, Sarah Wilson, Brenda Dickson, Gina Scrifes.  While these names were not in a proper affidavit and while the Court would be justified in granting ADC's motion on this point alone, the Court is concerned that an injustice may be done if Walker is not given an opportunity to explain further.  The law of summary judgment instructs we are to give the non-movant the benefit of the doubt. The Court is doing so here and concludes Walker has met her burden to establish a prima-facie case of discrimination.

As its legitimate nondiscriminatory reason for taking adverse employment actions against Walker, ADC claims she was not performing her job adequately.  As support, ADC has filed many documents noting the problems with Walker's employment.  ADC has met its relatively easy burden of production.

The burden now switches back to Walker to prove ADC's legitimate nondiscriminatory reason is pretext for discrimination.  Again, the Court gives Walker the benefit of the doubt.  She attested in her affidavit that she was the first

13

black employee to work in SOSRA.  While her performance had been strong before August 2002, suddenly, after she was passed over for promotion, the supervisor's records paint the picture of an incompetent employee who could not perform the simplest job duties.  This line is too stark.  Furthermore, Walker indicates white employees were treated more favorably than her despite committing some of the same errors as her.  The Court, viewing the evidence in a favorable light to Walker, concludes this is pretext for discrimination.  Therefore, as to these two discriminatory acts alone, ADC's motion for summary judgment is **DENIED**.

### e.  Retaliation

Walker's Third Amended Complaint is ambiguous as to retaliation as a cause of action (doc. # 36).  She did raise retaliation in her EEOC charge (doc. #59, exh. 66).  However, both parties briefed the issue, so the Court accepts retaliation as a claim.

The same McDonnell Douglas analysis applies to retaliation cases.  Stuart v. Gen. Motors Corp., 217 F.3d 621, 634 (8th Cir. 2000); cf. Bakhtiari, 2007 WL 3377215, at *3 n.3, *4 (Shepard, J., concurring in part) (discussing the application of the McDonnell Douglas burden shifting analysis).  To meet her prima facie obligation, the plaintiff must show (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) the two events are causally linked.

Clegg, 496 F.3d at 928.  Recently, the Supreme Court clarified the definition of an adverse employment action as any action that a reasonable employee would consider materially adverse. Burlington N. and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006).  The Court defined materially adverse as any action that might dissuade a reasonable employee from making or supporting a charge of discrimination.  Id. (citing Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  To show a causal connection, the temporal proximity between the protected activity and adverse action is relevant but cannot be the only evidence of retaliation.  Stuart, 217 F.3d at 635.

Walker engaged in a protected activity when she filed her EEOC charge in January 2003.  Under the broader Burlington Northern standard, the "fair" performance evaluation and written reprimand are adverse employment practices.  In Clegg, the Eighth Circuit held the plaintiff failed to show an adverse employment action because the acts she complained of, including a lower "satisfactory" performance evaluation, were trivial because they failed to meet the significant harm standard of Burlington Northern.  Here, however, the lower evaluation had the effect of precluding any promotions.  Knowing this would have a chilling effect on bringing any EEOC charges.  Therefore, Walker has met this burden.

Finally, regarding causal connection, ADC argues they cannot be connected because Flynn, as the person who decided to take action against Walker, was not aware of the 2003 EEOC charge

until Walker's January 2005 EEOC charge.  However, a complainant is required to serve an EEOC charge on the employer.  42 U.S.C. § 2000e-5(e)(1) (2000).  Therefore, ADC had knowledge of the complaint.

Twenty-two months separated the protected activity and the alleged adverse employment actions.  ADC correctly notes that this is a long period of time.  However, examining time alone does not preclude retaliation.  In those twenty-two months, ADC continued to document alleged performance deficiencies.  She was given reprimand and counseling statements.  However, prior to her 2003 EEOC charge, Walker was given strong praise for her performance.  Only after her 2003 charge did she allegedly commit many mistakes involving simple duties.  Walker has met her burden to show causal connection.

The Court concludes the same legitimate non-discriminatory reason and pretext analysis as applied for the discrimination claim applies to the retaliation claim.  It is too much of a coincidence that poor performance began after the 2003 EEOC charge.  Walker's retaliation claim survives.

### III. Conclusion

Granting a summary judgment in this case could result in an injustice.  The Court must view the facts in a light most favorable to the Plaintiff.  Therefore, the Court will give Walker her day in court.  ADC's summary judgment motion is

16

**GRANTED IN PART** and **DENIED IN PART**.   Trial in this case will begin January 22, 2008.

It is so ordered, this 20th day of November, 2007.

RODNEY S. WEBB  District Judge
United States District Court