IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHIRLEY WALKER                                              PLAINTIFF

vs.                          CASE NO. 4-05-CV-1336

ARKANSAS DEPARTMENT OF CORRECTION                           DEFENDANT

<u>**Memorandum Opinion and Order**</u>

The Defendant Arkansas Department of Correction ("ADC") has asked this Court to reconsider its order granting in part and denying in part ADC's motion for summary judgment (doc. #106). The Plaintiff Shirley Walker has also asked the Court to revisit its decision excluding her termination as a possible adverse employment act for retaliation. After careful review of the record and pertinent caselaw, the Court **GRANTS** ADC's motion for reconsideration (doc. #106) and **ORDERS** this case be **DISMISSED WITH PREJUDICE.**

**I.    Facts and Procedural Posture**

The Court recited the facts of the case in its original order on summary judgment (doc. #71, pp. 1-5). The Court will not restate those facts here. However, a recitation of the procedural posture at this point is necessary to properly frame ADC's renewed motion for reconsideration.

The Court granted in part and denied in part ADC's motion for summary judgment (doc. #71). The Court granted summary judgment as to Walker's § 1981 and § 1983 claims and granted summary judgment in favor of Sherri Flynn as to Walker's Title

1

VII claim against Flynn individually.  Id. at 7.  Next, the Court
addressed the alleged adverse employment actions for which Walker
had timely sued.  The Court concluded Walker had limited her
complaint to discriminatory acts that occurred between July 2004
and January 6, 2005, namely the November 2004 'fair' performance
evaluation and the December 2004 written reprimand.  Id. at 8-9.
The Court held Walker could not claim discrimination on the basis
of the August 2002 promotion because while she filed an EEOC
charge, she did not timely sue after receiving a right to sue
letter.  Id. at 9.  The Court also held Walker had not raised her
termination as a discriminatory act:

> Furthermore, Walker has not raised her termination
> as a discriminatory act in this lawsuit.  While she
> timely raised her termination in an EEOC charge, she
> sued ADC before she was terminated.  She has not
> amended her complaint to include a termination claim.
> Therefore, if she has received a right to sue letter
> more than ninety days ago, she is time barred from
> claiming discrimination or retaliation based on this
> conduct.

Id.  The Court carried this reasoning through to its discussion
of retaliation: "Under the broader Burlington Northern standard,
the 'fair' performance evaluation and written reprimand are
adverse employment practices."  Id. at 15.  The Court held
retaliation based on these adverse employment actions alone
survived summary judgment.  Id. at 16.  The Court never addressed
termination as a retaliatory adverse employment action because it
had already barred it as an action in its prior discussion.  Id.
at 9, 15, 16.

After issuing its opinion, ADC moved for reconsideration (doc. #73).  The Court denied that motion (doc. #76).  Trial was continued from January 2008 to April 2008 (doc. #97).  Prior to trial, the Court granted in part and denied in part ADC's motions in limine (doc. #100).  The Court held that Walker could introduce evidence of her employment history for context but not as a discrete act for which she could recover and that she could not introduce evidence of her termination because termination had been precluded as a discrete act of discrimination or retaliation.  Id. at 2-3.  The Court also held Walker could not collect damages because of her termination because the termination was not before the Court.  Id. at 3.

Walker then moved for interlocutory appeal, arguing the Court's holding on the motions in limine was tantamount to reopening ADC's motion for summary judgment on the retaliation claim (doc. #103, #104).  In a telephone conference to address Walker's motion, the parties and Court agreed that in lieu of the interlocutory appeal, ADC would seek reconsideration of its motion for summary judgment and Walker could reargue her position on retaliation (doc. #105).

## II.  Discussion

### A.    Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  The non-movant "must show there is sufficient evidence to support a jury verdict in [her] favor."  Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).  The non-movant cannot rely solely on the pleadings and must present specific facts by affidavit or other evidence showing a genuine issue of material fact.  Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005).  The court views the facts and the inferences to be drawn from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.   Discrimination**

The Court analyzes race discrimination within the familiar McDonnell Douglas Corp. v. Green burden shifting framework.  411 U.S. 792 (1973).  Under the McDonnell Douglas analysis, the plaintiff must first establish a prima facie case of discrimination.  Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007).  Once the plaintiff establishes a prima facie case, the defendant must meet a burden of production by articulating a legitimate nondiscriminatory reason for the adverse employment action.  Id.  Finally, if the defendant fulfills its burden of production, the burden returns to the

plaintiff to establish that the defendant's reason is pretext for discrimination.  <u>Id.</u>

To establish a prima facie case, a plaintiff must show that (1) she is a member of a protected class; (2) she was otherwise qualified for the position in which she was working; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside the protected class.  <u>Riley v. Lance, Inc.</u>, 518 F.3d 996, 1000 (8th Cir. 2008).  In its previous order, the Court stated the second prong was "she was meeting the employer's legitimate job expectations." (Doc. #71, at 10).  However, as Judge Bowman noted in <u>Riley</u>, this collapses the second prong of the prima facie test into the burden shifting of whether the defendant can present a legitimate non-discriminatory reason for the adverse employment action.  <u>Riley</u>, 518 F.3d at 1000.  The Eighth Circuit held this was error.  <u>Id.</u>  Therefore, the Court now corrects this error from its previous opinion and concludes Walker has met this burden.  ADC hired Walker as a qualified corrections counselor, and she worked in this capacity for several years until her termination in November 2005.  Therefore, she was qualified for the position.

ADC focuses its argument on the third and forth elements of the prima facie test.  First, it argues the "fair" performance evaluation and written reprimands were not adverse employment actions.  Generally, an adverse employment action is described as an act with a material employment disadvantage.  <u>Singletary</u>, 423

F.3d at 891.  Examples include changes in salary, benefits, and job responsibilities.  Id.  Poor performance evaluations and other disciplinary actions are generally not adverse employment actions because they do not materially affect employment. Singletary, 423 F.3d at 891-92; Spears v. Mo. Dep't of Corr., 210 F.3d 850, 854 (8th Cir. 2000).  However, they can be actionable where they have some detrimental effect on the employee's continued employment.  Clegg, 496 F.3d at 297; Singletary, 423 F.3d at 892.

In its original motion, the Court held the November 2004 "fair" performance evaluation and the December 2004 written reprimand were adverse employment actions.  ADC argues the Eighth Circuit's holdings in Turner v. Gonzales, 421 F.3d 688 (8th Cir. 2005), and Tademe v. Saint Cloud State Univ., 328 F.3d 982 (8th 2003), preclude that conclusion.[1]  In Turner, the plaintiff argued a poor performance rating was an adverse employment action because it made her ineligible for salary increases, both discretionary "'quality step increases'" and automatic "time-in-grade" increases.  Turner, 421 F.3d at 696.  The court held ineligibility for the discretionary pay increases was not an adverse employment action because the plaintiff could not show

_____

[1]  The Court notes Turner and Tademe discuss adverse employment actions in the context of retaliation, not discrimination.  However, both cases were decided before the Supreme Court's decision in Burlington N. and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006), and thus the test used to prove an adverse employment action was the same for discrimination and retaliation.  Therefore, the cases remain good law as applied to discrimination.

she would have received an increase absent the poor performance
rating and her salary was not decreased.  <u>Id.</u>  The automatic pay
increase, on the other hand, was an adverse employment action
because she would have received it absent the poor performance
rating.  <u>Id.</u>

Similarly, in <u>Tademe</u> the court held the decision not to
raise a college professor's salary was not an adverse employment
action because his salary was not diminished.  <u>Tademe</u>, 328 F.3d
at 992.  While he did not receive any discretionary salary
increases, he had not incurred a material employment disadvantage
from the challenged decision.  <u>Id.</u>

The Career Ladder Incentive Program ("CLIP") is a "merit
increase pay system," authorized under Arkansas law, that
incorporates pay and performance evaluations.  Ark. Code Ann. §
21-5-1101(a) and (c)(1) (2007).  "Merit payments may be awarded
to employees who satisfy performance evaluation-based criteria .
. . ."  <u>Id.</u> § 21-5-1101(d).  CLIP provides for incentive pay that
must be earned through effective performance.  Exhibit E to
Second Motion for Reconsideration, doc. #106-6, at 1.  Thus, CLIP
is strictly discretionary and not automatic.

After analyzing the Eighth Circuit's opinions in <u>Turner</u> and
<u>Tademe</u> and the purposes of Arkansas's CLIP program, the Court
concludes Walker's November 2004 "fair" performance evaluation
and the December 2004 written reprimand are not adverse
employment actions.  As in <u>Turner</u>, CLIP was strictly
discretionary, and Walker has not shown she would have received a

7

CLIP promotion absent the fair performance evaluation.
Furthermore, as in <u>Tademe</u>, while Walker did not receive a
discretionary pay increase, her salary did not diminish.
Therefore, she cannot show that she has suffered a material
employment disadvantage.

ADC also attacks Walker's proof of the fourth prong of the
prima facie case:  that similarly situated white employees were
treated differently than she was.  In response to ADC's motion
for summary judgment, Walker averred, "During my time at SOSRA I
noticed on many occasions white employee's [sic] receiving
'second chances' as it relates to mistakes," and, "In essence, I
can provide the names of persons who were treated more favorably
than I was with the only significant difference being the color
of my skin, i.e. Black."  (Doc. #66, at 4).  The Court warned
Walker that summary judgment was not the time to say you can
provide names; it is the time to provide names.  However, going
out of its way to give all reasonable doubt to Walker, the Court
allowed Walker to submit names of four employees to the Court
during oral argument and concluded Walker had met her prima facie
burden.

Since that time, ADC has evaluated the records and former
employment status of those four employees and argues only one is
similarly situated (doc. #107, at 7-8).  In response, Walker
avers two white employees, Sarah Wilson-Cotton and Jeania
Scifres, received "'second chances'" on mistakes (doc. #113-2).
She provides no detail or support for this allegation in the form

8

of affidavit, deposition, or documentation.  ADC also notes that in deposition, Walker testified in response to whether Ms. Scifres made the same mistakes as Walker, "Well, I believe that she might have." (Doc. #59, Exh. 67, p. 4).

Despite having survived ADC's first motion for reconsideration and having been on the eve of trial twice, Walker can provide the Court only with speculation and conclusion that she must have been treated differently than her coworkers.  Even under the most lenient view of the evidence, she cannot meet her burden on this prong.  Therefore, the Court concludes Walker has failed to show she was treated differently than similarly situated white employees.

### C.   Retaliation

ADC correctly notes retaliation was not claimed anywhere in Walker's Third Amended Complaint (doc. #36).  In its original order, the Court concluded, "Walker's Third Amended Complaint is ambiguous as to retaliation as a cause of action (doc. # 36). She did raise retaliation in her EEOC charge (doc. #59, exh. 66). However, both parties briefed the issue, so the Court accepts retaliation as a claim." (Doc. #71, p. 14).  Upon careful reconsideration, the Court concludes this holding was in error.

A complainant, in her claim for relief, must give "a short and plain statement of the claim showing that the pleader is entitled to relief;" and "a demand for the relief sought, which may include relief in the alternative or different types of

9

relief." Fed. R. Civ. P. 8(a)(2) and (3). Walker made no reference to retaliation as a claim in her complaint, so ADC was never put on notice that it would have to answer for a retaliation claim. ADC cautiously raised and briefed retaliation in its motion for summary judgment. It was error for the Court to take this as an admission that a retaliation claim existed. Therefore, the Court concludes Walker has not raised retaliation as a claim for relief and may not do so now.

If the Court's reconsidered holding is found to be error on appeal, the Court also notes the retaliation claim Walker wishes to present to a jury is retaliation from her termination (doc. #103-#104). However, as the Court explained above, Walker did not and has not properly claimed either discrimination or retaliation from her termination. The Court notes Walker requested back pay as a remedy, but that remedy is not justified from the claim for relief she made. See Fed. R. Civ. P. 8(a)(2). Under any circumstance, termination is not before this Court.

## III. Conclusion

The Court **VACATES IN PART** its prior summary judgment order (doc. #71), **GRANTS** ADC's second motion for reconsideration (doc. #106), and **ORDERS** this case **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 9th day of July, 2008.

RODNEY S. WEBB, District Judge
United States District Court